730 S.E.2d 305

### Mark FOUNTAIN, Appellant,

v.

### FIRST RELIANCE BANK, Thomas C. Ewart, and Ernest Pennell, Defendants, of Whom First Reliance Bank and Thomas C. Ewart are, Respondents.

No. 27141.

Supreme Court of South Carolina.

Heard May 3, 2012.

Decided July 11, 2012.

438

Robert Norris Hill, of Newberry, and William P. Hatfield, of Hyman Law Firm, of Florence, for Appellant.

Jeffrey L. Payne, of Turner Padget Graham & Laney, of Florence, for Respondents.

Justice HEARN.

Mark Fountain brought this action for defamation based on a statement by Thomas C. Ewart, chief banking officer for

First Reliance Bank, as to why the bank would not make a loan on a business venture between Fountain and Ernest Pennell. The circuit court granted summary judgment in favor of Ewart and First Reliance (collectively, Respondents), finding that the statement was not defamatory, and even if it was, Respondents were protected by a qualified privilege. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

In late 2008, Pennell, with encouragement and assistance from Fountain, sought to refinance or obtain a new loan in order to satisfy a $1.2 million delinquent mortgage held by Carolina First Bank on a convenience store owned by Pennell. The purpose of the loan was also to buy out Pennell's existing corporate partner, and to pay off a delinquent fuel supply charge. Fountain and Pennell also entered into an employment agreement whereby Fountain would be the store's manager.

This was not Fountain's first experience with a convenience store, as he previously had been a member of a failed business venture involving a combination convenience store and fast food restaurant (BoJo Tim venture). Although he was not the on-site manager, Fountain went to the store on a daily basis to supervise its operation. The BoJo Tim venture had given Carolina First a mortgage on some of its property, and Ewart, a Carolina First employee, was involved closely with Fountain in the venture. The BoJo Tim venture eventually had difficulty repaying the loan, and Fountain was sued, resulting in one judgment against him in favor of Tokyo Leasing for a debit card machine.[1]

With at least some of Fountain's financial background known to Pennell,[2] Fountain and Pennell approached First

---

1. Fountain also had at least four judgments against him unrelated to the BoJo Tim venture, including: (1) First Reliance for a motorcycle and a tractor; (2) Carolina First involving a boat; (3) First Federal for a line of credit business loan on a mobile home park; and (4) BB&T for a credit card.

2. When asked if he had told Pennell about his debts which did not relate to the BoJo Tim venture, Fountain responded, "Well, that's a Mark Fountain problem."

Reliance to request funds after two other lending institutions denied their loan requests. At this point in time, Ewart was the chief banking officer at First Reliance, and he called Pennell in for a meeting to discuss the matter. Fountain was not present. At that meeting, Ewart stated that First Reliance would not be making the loan if Fountain was involved in the business.[3] Pennell subsequently relayed Ewart's statement to Fountain, and told him to "tear up" the agreement between the two of them. Fountain later requested Pennell to meet him at his lawyer's office, where Pennell repeated the statement in front of Fountain's attorney.

Fountain filed a complaint against First Reliance, Ewart, and Pennell for defamation and intentional infliction of emotional distress. All three defendants filed motions for summary judgment.[4] The circuit court granted the motions, finding the statement was not defamatory, the publication of the statement was privileged, and no intentional infliction of emotional distress claim was established. Fountain appeals only the grant of summary judgment in favor of First Reliance and Ewart on his defamation claim.

## ISSUES PRESENTED

I.   Was Ewart's statement to Pennell defamatory?

II.  Are Respondents entitled to a qualified privilege?

---

3. The record contains three different versions of this statement. Fountain describes the statement as being "that as long as [Fountain] was involved in the transaction that First Reliance Bank would never make a loan to [Pennell] in order to refinance the Carolina First note and mortgage." Pennell recalls Ewart telling him First Reliance could not make him the loan "under the present status." Although Pennell does not remember Ewart referencing Fountain specifically, Pennell believed Ewart was referring to Fountain's involvement. And, finally, Ewart's recollection was he told Pennell, "[I]f Mark [Fountain] was going to be managing the operation, [First Reliance] would not be making the loan." Based on our standard of review on summary judgment, we use Fountain's version of the statement in our analysis. *Fleming v. Rose*, 350 S.C. 488, 493–94, 567 S.E.2d 857, 860 (2002) (viewing evidence and inferences in the light most favorable to the non-moving party on summary judgment).

4. Fountain also sued Pennell for breach of contract, and Pennell did not move for summary judgment on that claim.

## STANDARD OF REVIEW

"When reviewing the grant of summary judgment, the appellate court applies the same standard applied by the trial court pursuant to Rule 56(c), SCRCP." *Fleming*, 350 S.C. at 493, 567 S.E.2d at 860 (citing *Peterson v. West Am. Ins. Co.*, 336 S.C. 89, 94, 518 S.E.2d 608, 610 (Ct.App.1999)). "Summary judgment is appropriate when there is no genuine issue of material fact such that the moving party must prevail as a matter of law." *Id.* In order to withstand a motion for summary judgment "in cases applying the preponderance of the evidence burden of proof, the non-moving party is only required to submit a mere scintilla of evidence." *Hancock v. Mid–South Mgmt. Co., Inc.*, 381 S.C. 326, 330, 673 S.E.2d 801, 803 (2009).

## LAW/ANALYSIS

### I. DEFAMATION

Fountain first argues the circuit court erred in holding Ewart's statement was not defamatory. We disagree.

A person makes a defamatory statement if the statement "tends to harm the reputation of another as to lower him in the estimation of the community or deter third persons from associating or dealing with him." *Fleming*, 350 S.C. at 494, 567 S.E.2d at 860. The tort of defamation therefore permits "a plaintiff to recover for injury to his or her reputation as the result of the defendant's communications to others of a false message about the plaintiff." *Erickson v. Jones St. Publishers, L.L.C.*, 368 S.C. 444, 464, 629 S.E.2d 653, 664 (2006). We therefore require a plaintiff to prove the following four elements to state a claim for defamation: "(1) a false and defamatory statement was made; (2) the unprivileged publication was made to a third party; (3) the publisher was at fault; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Id.* at 465, 629 S.E.2d at 664.

"To render the defamatory statement actionable, it is not necessary that the false charge be made in a direct, open and positive manner. A mere insinuation is as actionable as a positive assertion if it is false and malicious and the

meaning is plain.'" *Tyler v. Macks Stores of S.C., Inc.*, 275 S.C. 456, 458, 272 S.E.2d 633, 634 (1980) (quoting *Timmons v. News & Press, Inc.*, 232 S.C. 639, 644, 103 S.E.2d 277, 280 (1958)). Statements therefore may be either defamatory on their face, or defamatory by way of innuendo. "Innuendo is extrinsic evidence used to prove a statement's defamatory nature. It includes the aid of inducements, colloquialisms, and explanatory circumstances." *Parrish v. Allison*, 376 S.C. 308, 325 n. 1, 656 S.E.2d 382, 391 n. 1 (Ct.App.2007) (internal citations omitted).

▮▮▮▮ Moreover, defamation is classified as either actionable per se or not actionable per se. Slander, which is involved here, "is actionable per se when the defendant's alleged defamatory statements charge the plaintiff with one of five types of acts or characteristics: (1) commission of a crime of moral turpitude; (2) contraction of a loathsome disease; (3) adultery; (4) unchastity; or (5) unfitness in one's business or profession." *Goodwin v. Kennedy*, 347 S.C. 30, 36, 552 S.E.2d 319, 322–23 (Ct.App.2001). Whether the statement is actionable per se is a matter of law for the court to resolve. *Erickson v. Jones Street Publishers, L.L.C.*, 368 S.C. 444, 465, 629 S.E.2d 653, 664 (2006). If the statement is actionable per se, then the defendant "is presumed to have acted with common law malice and the plaintiff is presumed to have suffered general damages." *Id.* If the statement is not actionable per se, then "the plaintiff must plead and prove both common law malice and special damages." *Id.*

▮▮▮▮ We turn first to the import of the statement on its face, which is that First Reliance would not make the loan so long as Fountain was involved in the venture. This is a true statement; First Reliance did refuse to make the loan to Pennell because of Fountain's involvement, and there is no evidence to the contrary. Thus, Respondents have a complete defense to defamation based on the statement's literal meaning. *See Parrish*, 376 S.C. at 326, 656 S.E.2d at 392 ("Truth is an affirmative defense. . . ."). Nevertheless, Fountain also argues the statement insinuated that he was an unfit businessman, which would be actionable per se if it did so. However, we do not believe the statement is capable of any reasonable defamatory construction.

In support of his argument, Fountain relies primarily on *Adams v. Daily Telegraph Co.,* 292 S.C. 273, 356 S.E.2d 118 (Ct.App.1986). In *Adams,* the court of appeals reversed the circuit court's grant of summary judgment in favor of two TV stations after broadcasting a press conference where the family of two murdered stepbrothers invited other members of the family to come forward and take "truth serum" or undergo "truth testing" regarding the unsolved murders. *Id.* at 275, 279–80, 356 S.E.2d at 119–20, 122. The family further encouraged the public to "draw their own conclusion" from the other family member's alleged refusal to cooperate. *Id.* at 276, 356 S.E.2d at 120. The father of one of the murdered boys sued for defamation, alleging the broadcasts implied he murdered the boys or was guilty of a misprision of a felony. *Id.* The circuit court granted summary judgment by disregarding the alleged innuendo and finding the facts stated in the two broadcasts were true. *Id.* at 278, 356 S.E.2d at 121. The court of appeals reversed, holding that a motion for summary judgment "will only be sustained where the court can affirmatively say that the publication is incapable of **any reasonable construction** which will render the words defamatory." *Id.* at 279, 356 S.E.2d at 122 (emphasis added).

Fountain reads *Adams* broadly to hold that words with any defamatory meaning are sufficient to avoid summary judgment, ignoring that part of the decision which states the construction must be "reasonable." *Adams* therefore does not extend to purely conjectural interpretations. Under the proper standard, we believe Fountain failed to adduce facts sufficient to withstand summary judgment that Ewart's statement was defamatory by innuendo. During his deposition, Fountain claimed the statement was "inappropriate" and "he just wouldn't say it being a banker," but this falls far short of establishing an implied defamatory meaning. Moreover, even assuming that Fountain did present sufficient evidence to establish a defamatory meaning through innuendo, the alleged defamation—that Fountain had a checkered business and financial history and was therefore a poor lending risk—was indisputably true. Without contradiction, the record reveals Fountain participated in a failed business venture and has a history of neglecting to repay his obligations. Thus, even assuming Fountain adduced sufficient evidence that the state-

ment implied through innuendo that he was a poor lending risk, it could not be deemed defamatory because it was unquestionably true.

Therefore, we hold there is no evidence Ewart's statement was defamatory and summary judgment was proper.

## II. QUALIFIED PRIVILEGE

Even if we were to find the statement defamatory, we hold Respondents are entitled to a qualified privilege as a matter of law. Fountain, relying on *Swinton Creek Nursery v. Edisto Farm Credit, ACA*, 334 S.C. 469, 514 S.E.2d 126 (1999), argues that evidence exists to show Respondents abused their privilege and thus this issue should go to the jury. We believe Fountain misinterprets our holding in *Swinton Creek*.

One who publishes defamatory matter concerning another is not liable for the publication if (1) the matter is published upon an occasion that makes it conditionally privileged, and (2) the privilege is not abused. *Id.* at 484, 514 S.E.2d at 134. " 'The essential elements of a conditionally privileged communication may be enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only.' " *Manley v. Manley*, 291 S.C. 325, 331, 353 S.E.2d 312, 315 (Ct.App.1987) (quoting *Conwell v. Spur Oil Co. of W.S.C.*, 240 S.C. 170, 178, 125 S.E.2d 270, 274–75 (1962)). An abuse of the privilege occurs in one of two situations: (1) a statement made in good faith that goes beyond the scope of what is reasonable under the duties and interests involved or (2) a statement made in reckless disregard of the victim's rights. *Swinton Creek*, 334 S.C. at 486, 514 S.E.2d at 135. "While abuse of privilege is ordinarily an issue for the jury, ... **in the absence of a controversy as to the facts** ... it is for the court to say in a given instance whether or not the privilege has been abused or exceeded." *Woodward v. S.C. Farm Bureau Ins. Co.*, 277 S.C. 29, 32–33, 282 S.E.2d 599, 601 (1981) (internal citations omitted) (emphasis added).

Fountain acknowledges the privilege exists in this case, but he argues there is evidence Respondents abused the privilege under *Swinton Creek*. There, James Futch owned and oper-

ated Swinton Creek Nursery, a business for which he borrowed $30,000 from the South Atlantic Production Credit Association. *Swinton Creek*, 334 S.C. at 473, 514 S.E.2d at 128. That credit association eventually merged with other credit associations to become Edisto Farm Credit. *Id.* at 473, 514 S.E.2d at 128. Futch became delinquent on his note with Edisto and agreed to work on a plan to liquidate the assets of the nursery to pay off his debt, eventually deciding to sell some of Swinton Creek's assets and equipment to Durwood Collins. *Id.* Collins approached Edisto about a loan for the acquisition. *Id.* at 474, 514 S.E.2d at 128. Lawton Huggins, the senior loan officer handling Collins' loan application, had a conversation with Futch during a visit to the nursery in which Futch indicated "time was of the essence because he had other pressing financial obligations including a past due loan." *Id.* Huggins subsequently wrote Collins a letter regarding the loan application, which included the following: "[T]he projected income for the nursery is not supported by a successful earnings trend. In fact, the operation you are purchasing has been under financial duress." *Id.* at 474, 514 S.E.2d at 129. Collins eventually bought the assets for less than the original amount from Futch. *Id.* at 476, 514 S.E.2d at 129. He also showed Futch Huggins' letter, who thereafter filed numerous causes of action, including defamation, against Edisto and Huggins. *Id.* at 475, 514 S.E.2d at 129. Edisto moved for a directed verdict on the defamation claim arguing it had a qualified privilege, and the circuit court granted the motion. *Id.* at 484, 514 S.E.2d at 133.

The court of appeals affirmed the circuit court, and on certiorari we reversed because evidence existed that Huggins' statement went beyond the scope of the qualified privilege, holding:

> It is questionable whether a specific comment about Swinton Creek's financial status was required to protect any interest or duty covered by the privilege. EFC contends it wrote the letter for the sole purpose of guiding Buyer into a successful loan application. **Yet, Buyer was only seeking to buy some of Owner's assets, not the entire Swinton Creek operation.** Moreover, if EFC wanted to convey to Buyer the difficulties of running a nursery in a small town,

it could have simply made a general statement without specifically referring to Owner.

*Id.* at 486, 514 S.E.2d at 135 (emphasis added). Thus, our concern in *Swinton Creek* was that evidence existed tending to show that the scope of Huggins' statement went beyond the circumstances surrounding Collins' involvement in Swinton Creek Nursery. The same is not true in this case. The store's management was an essential part of the analysis for the loan request, and Fountain's role as manager therefore was a valid consideration for First Reliance. Unlike *Swinton Creek*, there is nothing here indicating that Ewart informing Pennell of his concern about Fountain being involved in the business went beyond the scope of the privilege. In fact, this statement went straight to the heart of the loan request. While abuse of the privilege ordinarily is a question of fact for the jury, it is for the court to determine in the first instance whether there are facts demonstrating abuse. Here, the circuit court properly found there is no evidence the privilege was abused by going beyond its scope.

Even though we find Respondents did not abuse the privilege by making a statement outside of its scope, this does not end our inquiry. The privilege also can be abused if the statement is made in reckless disregard of the victim's rights. *See id.* at 486, 314 S.E.2d at 135. As proof of abuse, Fountain points to an affidavit by another bank official who claims that First Reliance did not follow banking policies and regulations in turning down the instant loan request. Negligent banking practices have never been claimed in this case, and regardless, negligence in reviewing a loan application does not bear on whether Respondents acted in reckless disregard of Fountain's rights by expressing a valid concern about his involvement in the convenience store. Accordingly, Fountain cannot rely on this affidavit to bootstrap his defamation claim. Therefore, there is no evidence the privilege was abused in this situation.

Banks are in the business of lending money, and to that end, they necessarily make business judgments on the financial viability of prospective borrowers, including their credit history. In this case, Respondents had prior knowledge of Fountain's previous failed business venture, as well as the other numerous judgments rendered against him. Based on this

information, Respondents made a valid business judgment to deny the loan to Pennell and Fountain, and Ewart's statement in that regard is protected by a qualified privilege. Moreover, while Ewart ostensibly could have declined to provide a reason for refusing the loan, that approach could damage the bank's reputation and thereby negatively impact its business. Because Fountain has not shown a scintilla of evidence that Respondents abused their qualified privilege, the circuit court did not err in granting summary judgment. *See Woodward,* 277 S.C. at 32–33, 282 S.E.2d at 601.

## CONCLUSION

We find Ewart's statement was not defamatory, and even if it was, a qualified privilege exists in this case. As there was no evidence that this privilege was abused by Respondents, summary judgment was proper.

TOAL, C.J., PLEICONES, KITTREDGE, JJ., and Acting Justice E.C. BURNETT, III, concur.