743 S.E.2d 93

**Frances CASTINE, Respondent,**

v.

**David W. CASTINE, Appellant.**

**Appellate Case No. 2011–183186.**

**No. 5120.**

Court of Appeals of South Carolina.

Heard Jan. 8, 2013.

Decided May 1, 2013.

Rehearing Denied June 20, 2013.

260

Robert Merrell Cook, II, of The Robert Cook Law Firm, LLC, of Batesburg–Leesville, for Appellant.

S. Jahue Moore, Jr. of Moore Taylor & Thomas, PA, of West Columbia, for Respondent.

LOCKEMY, J.

In this defamation case, David Castine appeals the circuit court's grant of summary judgment in favor of Frances Castine. He argues he presented sufficient evidence of the truth of the allegedly defamatory statements to withstand summary judgment. Furthermore, he contends the circuit court erred in finding his communications as a citizen regarding a public employee were not privileged. Finally, David argues the circuit court erred in finding he acted with malice as a matter of law. We affirm.

**FACTS**

Frances and David were previously related by marriage, as father-in-law and daughter-in-law. When Frances's husband passed away in 2007, the estate settlement caused tension between Frances and David.

Frances eventually obtained employment with Lexington County (the County) and has held her position for over three years. After discovering she had been hired by the County, David contacted several members of the Lexington County Council regarding the County's hiring practices. He stated he was concerned about Frances's employment with the County because she had a criminal record, was fired from the South Carolina Department of Motor Vehicles (SCDMV) for misconduct, and was a known user of illegal drugs. David was directed by a County councilman to contact the County's human resources manager about the issue. After contacting the human resources manager, David was told to put the concerns in writing and that the matter would be handled confidentially.

On April 1, 2009, David wrote his concerns were

1. [Frances] has a criminal record of several arrests or citations for fraudulent checks. As recent as 2007, she was arrested on a bench warrant for fraudulent checks. She also has been arrested for criminal domestic violence twice.

2. [Frances] was terminated from her previous employer, SC Department of Motor Vehicles for several reasons. She used a State credit card for her personal use. She would go into the department database and obtain personal information of people she did not like and use this information to harm these people. Because of her actions she caused a

long time state employee to lose her position as well. A SLED investigation was conducted into her actions and found wrongdoing causing her termination.

He also stated Frances was "a well-known drug user and has been for over 25 years.... These drugs include marijuana and cocaine." David sent a second letter to Katherine Hubbard, the County administrator on October 23, 2009. In that letter, he requested to have questions answered, including:

How can a person have a criminal record of writing fraudulent checks to Lexington County businesses for over twenty years get a job with the county?

How can a person that was terminated from a state agency after a state agency investigation and a SLED investigation were performed and found a person violating agency policies get hired by the county?

How can the Department of Human Resources and the Department of Public Safety ignore these facts when they were informed of them over six months ago?

In his deposition, David agreed with Frances's counsel that the intent behind his actions was to hurt Frances and have her fired. However, he later attempted to clarify his intent by testifying "every citizen has a right to protect the people that work for [the County]."

In a complaint filed in May 2009, Frances asserted causes of action for defamation/slander, negligence/recklessness, intentional interference with contractual rights, and a preliminary and permanent injunction. In his answer, David admitted he provided information to the County at its request but asserted that the information was true and privileged. Prior to trial, Frances filed a motion for summary judgment on the issue of liability. During a hearing before the circuit court, David put forth two defenses to preclude summary judgment on his defamation charge. First, he asserted an absolute defense of truth. Second, he asserted a defense of privilege, either qualified or absolute.

The circuit court determined Frances was entitled to a judgment as a matter of law on the issue of defamation and the matter should proceed to trial on the issue of damages. The court found David's statements were defamatory *per se.*

The circuit court also found David made the statements with the express intent of harming Frances; therefore, malice existed as a matter of law. Additionally, the circuit court determined there was no qualified privilege, noting there "is no constitutional right on the part of one citizen to [maliciously] impugn the reputation of another." The court subsequently denied David's Rule 59(e) motion to alter or amend. This appeal followed.

## STANDARD OF REVIEW

When reviewing the grant of a summary judgment motion, this court applies the same standard that governs the trial court under Rule 56(c), SCRCP; summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Fleming v. Rose*, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002). In determining whether a genuine issue of fact exists, the evidence and all reasonable inferences drawn from it must be viewed in the light most favorable to the nonmoving party. *Sauner v. Pub. Serv. Auth. of S.C.*, 354 S.C. 397, 404, 581 S.E.2d 161, 165 (2003). "Once the moving party carries its initial burden, the opposing party must come forward with specific facts that show there is a genuine issue of fact remaining for trial." *Sides v. Greenville Hosp. Sys.*, 362 S.C. 250, 255, 607 S.E.2d 362, 364 (Ct.App.2004).

## LAW/ANALYSIS

The tort of defamation allows plaintiffs to recover for injuries to their reputation as the result of defendants' communications to others of a falsity regarding the plaintiffs. *Boone v. Sunbelt Newspapers, Inc.*, 347 S.C. 571, 580, 556 S.E.2d 732, 737 (Ct.App.2001). Defamation does not focus on the hurt to the defamed parties' feelings, but on the injury to their reputations. *Murray v. Holnam, Inc.*, 344 S.C. 129, 138, 542 S.E.2d 743, 748 (Ct.App.2001). "In order to prove defamation, the plaintiff must show (1) a false and defamatory statement was made; (2) the unprivileged publication was made to a third party; (3) the publisher was at fault; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publica-

tion." *Erickson v. Jones St. Publishers, L.L.C.*, 368 S.C. 444, 465, 629 S.E.2d 653, 664 (2006). "A communication is defamatory if it tends to impeach the honesty, integrity, virtue, or reputation. . . ." Hubbard and Felix, *The South Carolina Law of Torts* 462 (2d ed.1997).

## I. Truth

■ David argues the circuit court erred in granting summary judgment because evidence was presented that the statements he made to the County were true. We disagree.

Relying on *Ross v. Columbia Newspapers, Inc.*, 266 S.C. 75, 221 S.E.2d 770 (1976), David maintains the defense of truth does not require proof that the statements were completely true, but only that the statements were substantially true. In *Ross*, the supreme court held, in the context of a newspaper article, that (1) "both the headline and the article following it must be considered as one document in determining whether it is defamatory," and (2) "a sufficient defense is made out where the evidence establishes that the statement was substantially true." 266 S.C. at 80–81, 221 S.E.2d at 772–73. Here, although the first holding in *Ross* is not applicable because the present case does not involve a newspaper article, the second holding still applies.

■ In this case, David admitted that at least one statement he made, the accusation of improper credit card use, was not true. On appeal, David contends that because most of the statements he made are true, then both letters he sent to the County are substantially true. We find David is not entitled to the truth defense, as a matter of law, because he admitted the statement he made about Frances's improper credit card use was false. Substantial truth must be proven as to each individual statement David made, not as to the contents of the letters he sent as a whole. In that respect, we find *Ross* distinguishable from this case. Accordingly, we affirm the circuit court's ruling as to the falsity of David's statement regarding Frances's credit card use because there is no evidence that statement is true. Whether the other statements were false is a matter for the jury.

## II. Privilege

■ David argues the circuit court erred in granting summary judgment because the statements he made to the County were privileged. We disagree.

■■ David contends that as a taxpayer and citizen of the County, the statements he made to County officials about the suitability of Frances for employment as a county employee are privileged. "In a defamation action, the defendant may assert the affirmative defense of conditional or qualified privilege." *Swinton Creek Nursery v. Edisto Farm Credit, ACA,* 334 S.C. 469, 484, 514 S.E.2d 126, 134 (1999). "Under this defense, one who publishes defamatory matter concerning another is not liable for the publication if (1) the matter is published upon an occasion that makes it conditionally privileged, and (2) the privilege is not abused." *Id.* (citing Restatement (Second) of Torts, § 593 (1977); *see Bell v. Bank of Abbeville,* 208 S.C. 490, 38 S.E.2d 641 (1946)). In *Bell,* our supreme court held:

> In determining whether or not the communication was qualifiedly privileged, regard must be had to the occasion and to the relationship of the parties. When one has an interest in the subject matter of a communication, and the person (or persons) to whom it is made has a corresponding interest, every communication honestly made, in order to protect such common interest, is privileged by reason of the occasion. The statement, however, must be such as the occasion warrants, and must be made in good faith to protect the interests of the one who makes it and the persons to whom it is addressed.

*Bell,* 208 S.C. at 493–94, 38 S.E.2d at 643.

"In general, the question whether an occasion gives rise to a qualified or conditional privilege is one of law for the court." *Id.* Here, in light of David's admission of his intent to harm Frances and get her fired, we find the circuit court did not err in finding privilege did not exist. Because privilege is not applicable to the specific facts of this case, we affirm the circuit court.

268

## III. Malice

David argues the circuit court erred in finding he acted with malice as a matter of law. We disagree.

Under the common law, a defamatory statement may be actionable *per se*, in which case the court presumes a defendant acted with common law malice[1] and the plaintiff suffered general damages. *Erickson*, 368 S.C. at 465, 629 S.E.2d at 664. Common law malice is a presumption of law and "dispenses with the proof of malice when words which raise such presumption are shown to have been uttered." *Murray*, 344 S.C. at 143, 542 S.E.2d at 750 (quoting *Jones v. Garner*, 250 S.C. 479, 488, 158 S.E.2d 909, 914–15 (1968)). Moreover, common law malice is a form of malice that is "not necessarily inconsistent with an honest or even laudable purpose and does not imply ill will, personal malice, hatred, or a purpose to injure." *Jones*, 250 S.C. at 488, 158 S.E.2d at 914. Thus, the presumption of common law malice does not mean the defendant's conduct evidenced common law *actual* malice, which is defined as acting with "ill will toward the plaintiff," or acting "with conscious indifference of the plaintiff's rights." *Erickson*, 368 S.C. at 466, 629 S.E.2d at 665.

Slander is actionable *per se* "only when it charges the plaintiff with one of five types of acts or characteristics: (1) commission of a crime of moral turpitude; (2) contraction of a loathsome disease; (3) adultery; (4) unchastity; or (5) unfitness in one's business or profession." *Erickson*, 368 S.C. at 465–66 n. 7, 629 S.E.2d at 664 n. 7. However, "[l]ibel is actionable *per se* if it involves written or printed words which tend to degrade a person, that is, to reduce his character or reputation in the estimation of his friends or acquaintances, or the public, or to disgrace him, or to render him odious, contemptible, or ridiculous." *Holtzscheiter*, 332 S.C. at 510–11, 506 S.E.2d at 502 (citation omitted).

David's statements to the County are actionable *per se*. Thus, the law presumes David acted with common law malice. This presumption does not imply that David acted

---

1. "Common law malice" is also called "legal malice," "malice in law," "presumed malice," or "implied malice." *Holtzscheiter v. Thomson Newspapers, Inc.*, 332 S.C. 502, 510, n. 3, 506 S.E.2d 497, 501–502, n. 3 (1998); *Jones*, 250 S.C. at 488, 158 S.E.2d at 914–15.

with common law actual malice, thus he may not rebut this presumption by showing his conduct evidenced a lack of ill will, personal malice, hatred, or a purpose to injure. Under South Carolina law, David may rebut the presumption of common law malice only by showing the statement was privileged. *See Swinton Creek Nursery,* 334 S.C. at 485, 514 S.E.2d at 134 (stating because malice was presumed, it was defendant's burden to establish that a privilege existed in order to rebut this presumption); *Murray,* 344 S.C. at 142, 542 S.E.2d at 750 (citing *Bell,* 208 S.C. at 494–95, 38 S.E.2d at 643, to explain privileged communication is an exception to the rule that malice will be presumed where the offending statement is actionable *per se*). Because David has not established that a privilege existed, the presumption of common law malice requires a finding of general damages as to the accusation of improper credit card use. *See Holtzscheiter,* 332 S.C. at 510, 506 S.E.2d at 501 (explaining when the law presumes the defendant acted with common law malice, it is also presumed the plaintiff suffered general damages).

None of this discussion applies to common law *actual* malice. Therefore, to the extent the existence of common law actual malice becomes an issue, its existence is a question of fact that must be proven at trial. *See Murray,* 344 S.C. at 144, 542 S.E.2d at 751 (stating the existence of common law actual malice "is ordinarily for the jury to decide"); *Jones,* 250 S.C. at 488, 158 S.E.2d at 914 ("While [common law] malice will support an award of actual damages, punitive damages cannot be recovered in the absence of proof of [common law] actual malice.").

Accordingly, the findings of the circuit court are

**AFFIRMED.**

FEW, C.J., concurs.

SHORT, J., concurs in result only.