WILLIAMS, J.:
**32 In this civil matter, David Loree appeals the award of actual damages to Scott Kunst on his defamation cause of action. Loree argues the circuit court erred in sustaining the jury's verdict because (1) Loree proved the substantial truth of the allegedly defamatory statements and proved a qualified privilege existed, (2) sufficient evidence did not support the verdict, and (3) the verdict was excessive. We affirm.
**33 FACTS/PROCEDURAL HISTORY
This case arose out of David Loree's investigation into the construction of Richard and Barbara Gaby's (the Gabys') home on Lake Keowee, outside of Greenville, South Carolina. In 2004, the Gabys contracted with Kunstwerke Corporation (Kunstwerke) to design and build their residence at The Reserve on Lake Keowee (The Reserve).
Scott Kunst, a former certified public accountant, founded Kunstwerke after he started designing and building custom homes.[1] At trial, Kunst explained how his business differed from other firms and contractors, specifically detailing how his unique accounting methods and billing system allowed him to build the custom homes. Instead of utilizing the typical fiduciary construction-account system, Kunstwerke implemented a reimbursement system that allowed the company to advance credit to a client for building materials, which the client later reimbursed.[2] To ease the burden on its clients, Kunstwerke compiled daily invoices from vendors and subcontractors into a weekly summary, called a progress billing. It then forwarded the progress billing and copies of the invoices to each respective client every week for reimbursement. Because large amounts of money flowed through Kunstwerke each week, Kunst relied on his clients to trust his ability to manage financial matters involved in constructing their homes.
Because the company advanced credit to its clients, Kunstwerke required its clients to pay their weekly progress billing immediately upon receipt to continue the construction of their homes. Kunst explained any stoppage in payment required Kunstwerke to stop construction to reconcile the client's account. Kunst testified he relied upon Kunstwerke as his only source of income, which he derived from monthly fees[3] **34 charged to clients for designing and building their homes. Kunst explained that the amount of collected fees remaining after he deducted corporate expenses were available to him as *300 a personal draw from Kunstwerke's capital. Consequently, because he did not have a personal checking account, Kunst stated he made personal purchases using personal draws from the Kunstwerke corporate account.
In January 2006, Kunst experienced a "cash crisis." Kunstwerke had numerous projects nearing completion, and while the company was more profitable than it had ever been, Kunstwerke had also extended the most credit in its history. Compounding matters, Kunst claimed that some clients were not making timely payments, and that his bank implemented a new policy that placed ten-day holds on deposits, which prevented deposits from becoming immediately available to Kunstwerke. In February 2006, the Gabys-concerned that Kunst was over budget and not paying subcontractors or vendors-instructed Loree, their employee,[4] to investigate the matter. Loree sought to meet with Kunst at The Reserve, and requested that he bring copies of paid invoices and canceled checks-showing the disbursement of funds transferred by the Gabys-to explain what happened to their funds and to reconcile their account. As part of his investigation, Loree contacted numerous vendors, subcontractors, and other Kunstwerke clients to determine the balances of each account and to facilitate timely completion of the Gabys' home.
At trial, Tracy Hilton, Kunst's fiancée, testified she and Kunst received several inquiries from clients and subcontractors asking who Loree was, why he was contacting them, and what was happening with Kunstwerke. Kevin Goad, a vendor, and Glenn Alfonzo, a subcontractor, testified to meeting with Loree in 2006. Both men acknowledged discussing their respective accounting matters related to the Gaby project with Loree, who told them Kunst had taken money from the Gabys and other clients. Goad noted Loree mentioned that Kunst used false invoices to take money from clients and spent client **35 money on other projects. Similarly, Alfonzo recalled that Loree claimed Kunst took out an insurance policy on the Gaby project and later canceled the policy to keep the money. Although Loree admitted to contacting numerous vendors, subcontractors, and clients, he denied, or asserted he did not recall, making the statements to Goad or Alfonzo or discussing Kunst's financial matters with anyone.
Upon concluding his investigation, Loree found Kunst had not paid several vendors and subcontractors for some time, despite receiving wire transfers from the Gabys for invoiced amounts.[5] To resume construction of their home following Loree's investigation, the Gabys "double paid" and wrote checks directly to certain vendors and subcontractors, even though they allegedly paid Kunst for the same work. In March 2006, the Gabys terminated their contract with Kunst and Kunstwerke. Kunst stated the Gabys stopped paying him during Loree's investigation, and subsequently, other clients stopped making payments as well. As a result, Kunst dissolved Kunstwerke.
In May 2006, the Gabys brought an action (the Gaby Action) against Kunst and Kunstwerke, alleging breach of contract, breach of contract accompanied by fraudulent acts, conversion, and violation of the South Carolina Unfair Trade Practices Act. Kunst and Kunstwerke failed to timely answer the Gabys' complaint, and the circuit court entered default on June 20, 2006. Kunst and Kunstwerke moved for relief from default, but the circuit court denied the motion in December 2006. Following a March 2007 damages hearing, the circuit court issued an order awarding the Gabys actual and punitive damages, and attorney's fees and costs.
After the circuit court denied his motion for relief from default, Kunst brought the current action against the Gabys and Loree on December 19, 2006, alleging defamation, *301 tortious interference with contractual relations, unjust enrichment, and intentional infliction of emotional distress. On April 14, 2007, the circuit court issued an order dismissing Kunst's causes of **36 action against the Gabys. The court found Kunst's causes of action were compulsory counterclaims under Rule 13(a), SCRCP, that should have been brought in the Gaby Action, and further, were barred under the doctrine of collateral estoppel. Accordingly, only the causes of action against Loree remained.
In March 2009, the circuit court granted summary judgment on Kunst's claims for tortious interference and intentional infliction of emotional distress, leaving only the defamation claim. On September 20, 2010, Loree moved for summary judgment based on collateral estoppel on Kunst's defamation cause of action. The circuit court granted Loree's motion and dismissed Kunst's defamation claim, finding the final adjudication of the Gaby action established Loree's affirmative defense of truth as a matter of law. Kunst appealed the circuit court's order, and on August 14, 2013, this court reversed and remanded the case to trial.[6]
On May 26-28, 2015, the circuit court held a jury trial on Kunst's defamation claim against Loree. In his pretrial brief,[7] Kunst claimed Loree made the following statements alleging criminal activity:
Slander 1: [Kunst] embezzled $400,000 from the Gabys.
Slander 2: [Kunst] embezzled money from all of his clients.
Slander 3: [Kunst] had taken money from named clients Parham, Covington, Coco, and Hickey.
Slander 4: [Kunst] created dummy invoices from dummy companies so that he could steal money from these clients.
Slander 5: [Kunst] took money from his clients to spend on an investment project, a car, trips, and family members.
**37 Slander 6: [Kunst] did "criminal things" like take out an insurance policy, bill the Gabys, and then cancel it the next day so that he could keep the money.
Slander 7: [Kunst] "is going to jail."
Slander 8: [Kunst] took money from his other projects and that money was missing from these projects.
Following trial, the jury returned a verdict in favor of Kunst and awarded him $1 million in actual damages. Loree moved for judgment notwithstanding the verdict (JNOV), a new trial absolute, or in the alternative, a new trial nisi remittitur . On June 17, 2015, the circuit court denied Loree's motions. This appeal followed.
ISSUES ON APPEAL
I. Did evidence support the jury's verdict that Kunst proved the elements of slander per se?
II. Did the circuit court err in failing to set aside the verdict despite the jury's findings that (A) Loree did not prove the truth of the alleged slanderous statements and (B) Loree was not protected by a qualified privilege?
III. Was the jury's verdict excessive, warranting a new trial?
STANDARD OF REVIEW
In an action at law, when a case tried by a jury is appealed, "the jurisdiction of the appellate court extends merely to the correction of errors of law, and a factual finding by the jury will not be disturbed unless a review of the record discloses there is no evidence which reasonably supports the jury's findings." Wright v. Craft , 372 S.C. 1, 18, 640 S.E.2d 486, 495 (Ct. App. 2006).
When making a motion for directed verdict, a party must state the specific grounds relied upon therefor, and the circuit court may grant the motion when the case *302 presents only issues of law. Rule 50(a), SCRCP. If the court denies the motion, the party may then move for a JNOV to have the verdict and judgment set aside and a judgment entered in accordance with the party's directed verdict motion. Rule 50(b), SCRCP. A motion for a new trial may be joined with the JNOV motion or prayed for in the alternative. Rule 50(b), SCRCP. When a circuit court's ruling on a motion for a **38 directed verdict or a JNOV is appealed, an appellate court must apply the same standard as the circuit court. RFT Mgmt. Co. v. Tinsley & Adams L.L.P. , 399 S.C. 322, 331, 732 S.E.2d 166, 171 (2012). In determining these motions, the circuit court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the nonmoving party. McBride v. Sch. Dist. of Greenville Cty. , 389 S.C. 546, 558, 698 S.E.2d 845, 851 (Ct. App. 2010). If the evidence at trial yields more than one reasonable inference or its inference is in doubt, the circuit court must deny the motion for directed verdict or JNOV. RFT Mgmt. Co. , 399 S.C. at 332, 732 S.E.2d at 171. "When considering [such] motions, neither the [circuit] court nor the appellate court has [the] authority to decide credibility issues or to resolve conflicts in the testimony or [the] evidence." Parrish v. Allison , 376 S.C. 308, 319, 656 S.E.2d 382, 388 (Ct. App. 2007). The appellate court can only reverse the circuit court when no evidence exists to support the circuit court's ruling. Swinton Creek Nursery v. Edisto Farm Credit, ACA , 334 S.C. 469, 477, 514 S.E.2d 126, 130 (1999).
"On appeal, the appellate court reviews a denial of a new trial motion for an abuse of discretion." Duncan v. Hampton Cty. Sch. Dist. No. 2 , 335 S.C. 535, 547, 517 S.E.2d 449, 455 (Ct. App. 1999). "The grant or denial of new trial motions rests within the discretion of the [circuit court] and [its] decision will not be disturbed on appeal unless [its] findings are wholly unsupported by the evidence or the conclusions reached are controlled by error of law." Vinson v. Hartley , 324 S.C. 389, 405, 477 S.E.2d 715, 723 (Ct. App. 1996). In determining whether the circuit court erred in denying a motion for a new trial, the appellate court must consider the testimony and reasonable inferences to be drawn therefrom in the light most favorable to the nonmoving party. Id.
LAW/ANALYSIS
I. Slander Per Se
Loree argues the circuit court erred in sustaining the jury's verdict because evidence does not support the jury's finding that Kunst proved the elements of slander per se. We disagree.
**39 "Defamatory communications take two forms: libel and slander. Slander is a spoken defamation while libel is a written defamation or one accomplished by actions or conduct." Swinton Creek Nursery , 334 S.C. at 484, 514 S.E.2d at 133-34. "The publication of a statement is defamatory if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Fleming v. Rose , 350 S.C. 488, 494, 567 S.E.2d 857, 860 (2002). Accordingly, the tort of defamation allows a plaintiff to recover when a defendant communicates a false message about the plaintiff to others, injuring the plaintiff's reputation. McBride , 389 S.C. at 559, 698 S.E.2d at 852. To state a claim for defamation, the plaintiff must prove: (1) a false and defamatory statement was made; (2) the unprivileged publication of the statement was made to a third party; (3) the publisher was at fault; and (4) either actionability of the statement regardless of special harm or the publication of the statement caused special harm. Fountain v. First Reliance Bank , 398 S.C. 434, 441, 730 S.E.2d 305, 309 (2012).
Defamation may be either actionable per se or not actionable per se. Id. at 442, 730 S.E.2d at 309. "Slander is actionable per se when the defendant's alleged defamatory statements charge the plaintiff with one of five types of acts or characteristics: (1) commission of a crime of moral turpitude; (2) contraction of a loathsome disease; (3) adultery; (4) unchastity; or (5) unfitness in one's business or profession." Goodwin v. Kennedy , 347 S.C. 30, 36, 552 S.E.2d 319, 322-23 (Ct. App. 2001). When a defamatory statement is actionable per se, the plaintiff need *303 not prove general damages-as these damages are presumed-and the defendant is presumed to have acted with common law malice. See Fountain , 398 S.C. at 442, 730 S.E.2d at 309. "Whether the statement is actionable per se is a matter of law for the court to resolve." Id.
While Loree asserts no evidence exists in the record to show that his alleged slanderous statements met the elements of slander per se, we note that statements alleging the commission of a crime, such as theft, are actionable per se. See McBride , 389 S.C. at 561, 698 S.E.2d at 852 (determining a statement that accused a teacher of stealing property was **40 actionable per se because it accused the teacher of committing a crime involving moral turpitude); see also Turner v. Montgomery Ward & Co. , 165 S.C. 253, 260-61, 163 S.E. 796, 798 (1932) (finding any words that clearly assume or imply that one committed a crime or that raise strong suspicion in the minds of the hearers that one committed a crime are actionable per se). Moreover, upon our review of the record, we find evidence supports Kunst's allegations that Loree made several slanderous statements accusing Kunst of, among other things, embezzling money from all his clients and taking money from clients to spend elsewhere. See Swinton Creek Nursery , 334 S.C. at 477, 514 S.E.2d at 130 (finding the appellate court can only reverse the circuit court when no evidence exists to support the circuit court's ruling).
At trial, Goad testified Loree told him that Kunst took money from clients and used clients' money for an investment project. Additionally, Alfonzo testified Loree mentioned that Kunst took out an insurance policy on the Gaby project, billed the Gabys, and intentionally canceled the policy to keep the money. Viewing the evidence in a light most favorable to Kunst, the nonmoving party, we find Loree's statements were actionable per se because the statements accused Kunst of committing a crime of moral turpitude-theft. See McBride , 389 S.C. at 561, 698 S.E.2d at 852. Accordingly, we affirm the circuit court's denial of Loree's motion for JNOV because evidence supports the jury's findings.
II. Defenses to Defamation
A. Truth
Loree asserts the circuit court erred in sustaining the verdict because Loree proved the alleged slanderous statements were substantially true. We disagree.
"The truth of the matter is a complete defense to an action based on defamation." WeSav Fin. Corp. v. Lingefelt , 316 S.C. 442, 445, 450 S.E.2d 580, 582 (1994) (per curiam). "Under common law, a defamatory communication was presumed to be false, but truth could be asserted as an affirmative defense." Parrish , 376 S.C. at 326, 656 S.E.2d at 391. When the alleged defamatory statements are published by a private figure and involve a matter of private concern, the **41 plaintiff is not required to prove falsity of the statements; instead, the defendant has the burden of pleading and proving the substantial truth of each of the alleged defamatory statements. See Castine v. Castine , 403 S.C. 259, 266, 743 S.E.2d 93, 96-97 (Ct. App. 2013) ("Substantial truth must be proven as to each individual statement [appellant] made, not as to the contents of the letters he sent as a whole."); Parrish , 376 S.C. at 326, 656 S.E.2d at 392 ("If the statements are a matter of private concern, the plaintiff is not required to prove falsity. Thus, truth is an affirmative defense as to which the defendant has the burden of pleading and proof, unless the statement involves a constitutional issue." (citation omitted) ). "When the truth of the defamatory communication is in dispute, the issue is a jury question." Weir v. Citicorp Nat'l Servs., Inc. , 312 S.C. 511, 515, 435 S.E.2d 864, 867 (1993).
We find the circuit court correctly denied Loree's motion for JNOV because the parties presented conflicting evidence regarding the truth of the statements, which created a question for the jury. For instance, Loree asserted his statements that Kunst took money from clients and spent it elsewhere were true because Loree introduced letters and invoices from suppliers showing Kunst did not pay subcontractors, despite receiving the funds to make the payments. Moreover, Loree argued that Kunst's own *304 witness, Edward Covington, testified Kunst took money from his project and spent the money on an engagement ring. Conversely, Kunst explained how his personal draw schedule allowed him to make personal purchases-such as an engagement ring in 2005-using Kunstwerke capital collected from clients in the form of design fees. Further, Kunst detailed why production must stop if a client fell behind in his or her progress billing payments. Kunst later explained that, because the Gabys were behind in their payments, he withheld paying subcontractors-despite receiving money from the Gabys for specific invoices-so he could reconcile the Gabys' account.
Mindful of our standard of review and without elaborating on the credibility of any evidence, we find Kunst's testimony and explanations were sufficient to create a conflict in the veracity of Loree's alleged statements. See Parrish , 376 S.C. at 319, 656 S.E.2d at 388 (stating that, when deciding motions for directed verdict or JNOV, neither the circuit court nor the **42 appellate court has authority to determine credibility issues or resolve conflicts in the evidence or testimony). Moreover, evidence in the record supports the jury's findings. See Swinton Creek Nursery , 334 S.C. at 477, 514 S.E.2d at 130 (finding the appellate court can only reverse the circuit court when no evidence exists to support the circuit court's ruling). Thus, we affirm and find the circuit court did not err in either refusing to overturn the verdict or denying Loree's motion for JNOV because determining the veracity of the statements was a question for the jury.
B. Qualified Privilege
Loree also argues the verdict was an error of law and the circuit court erred in not overturning it because Loree proved the statements were protected by a qualified privilege. We disagree.
A defendant may assert a conditional or qualified privilege as an affirmative defense in a defamation action when the defamation is made in good faith and with proper motives. See id. at 484, 514 S.E.2d at 134 ("In a defamation action, the defendant may assert the affirmative defense of conditional or qualified privilege."); Abofreka v. Alston Tobacco Co. , 288 S.C. 122, 125, 341 S.E.2d 622, 624 (1986) ("Whe[n] the defamation is made in good faith and with proper motives, a defendant may claim a qualified or conditional privilege."). "Under this defense, one who publishes defamatory matter concerning another is not liable for the publication if (1) the matter is published upon an occasion that makes it conditionally privileged, and (2) the privilege is not abused." Swinton Creek Nursery , 334 S.C. at 484, 514 S.E.2d at 134. However, the privilege does not protect against unnecessary defamation, and the person making the statement must be careful not to go beyond what his interests or duties require. Murray v. Holnam, Inc. , 344 S.C. 129, 141, 542 S.E.2d 743, 749 (Ct. App. 2001).
In Bell v. Bank of Abbeville , our supreme court held:
In determining whether or not the communication was qualifiedly privileged, regard must be had to the occasion and to the relationship of the parties. When one has an **43 interest in the subject matter of a communication, and the person (or persons) to whom it is made has a corresponding interest, every communication honestly made, in order to protect such common interest, is privileged by reason of the occasion. The statement, however, must be such as the occasion warrants, and must be made in good faith to protect the interests of the one who makes it and the persons to whom it is addressed.
208 S.C. 490, 493-94, 38 S.E.2d 641, 643 (1946). Generally, whether an occasion gives rise to a qualified privilege is a question of law for the court. Castine , 403 S.C. at 267, 743 S.E.2d at 97. "A qualified privilege may exist whe[n] the parties have a common business interest. However, the qualified privilege exists only when the publication has occurred in a proper manner and to proper parties only." Abofreka , 288 S.C. at 125-26, 341 S.E.2d at 624-25 (citation omitted).
When the occasion gives rise to a qualified privilege, a prima facie presumption to rebut the inference of malice exists, and the plaintiff has the burden to show either actual malice or that the scope of the privilege *305 has been exceeded. Swinton Creek Nursery , 334 S.C. at 484, 514 S.E.2d at 134. The privilege is abused and lost, leaving the speaker unprotected, when either of following situations occur: "(1) a statement [is] made in good faith that goes beyond the scope of what is reasonable under the duties and interests involved or (2) a statement [is] made in reckless disregard of the victim's rights." Fountain , 398 S.C. at 444, 730 S.E.2d at 310. "[T]he fact that a duty, a common interest, or a confidential relation existed to a limited degree, is not a defense, even though the publisher acted in good faith." Swinton Creek Nursery , 334 S.C. at 485, 514 S.E.2d at 134 (quoting Fulton v. Atl. Coast Line R. Co. , 220 S.C. 287, 297, 67 S.E.2d 425, 429 (1951) ). Ordinarily, the jury determines if a qualified privilege has been abused or exceeded. See id. ("Factual inquiries, such as whether the defendants acted in good faith in making the statement, whether the scope of the statement was properly limited in its scope, and whether the statement was sent only to the proper parties, are generally left in the hands of the jury to determine whether the privilege was abused."). **44 At trial, Loree moved for a directed verdict and JNOV on the basis that his statements were protected by a qualified privilege. Loree argues a qualified privilege protected his alleged defamatory statements because Kunst did not show that Loree made the statements to anyone other than subcontractors and vendors. We find Loree's statement that Kunst took money from other clients was not a proper matter for Loree to discuss during the investigation of the Gaby project. See Abofreka , 288 S.C. at 125-26, 341 S.E.2d at 624-25 ("[T]he qualified privilege exists only when the publication has occurred in a proper manner and to proper parties only."). Here, an occasion gave rise to the existence of a qualified privilege because Loree, the Gabys' employee, investigated whether Kunst paid the subcontractors and vendors on the Gaby project. Inherently, the scope of Loree's duties and interests extended to any discussion of financial matters involved with the Gaby project. However, Loree's qualified privilege only extended as far as Loree's duties and interests required, which meant that the privilege did not protect matters outside the Gaby project. See Swinton Creek Nursery , 334 S.C. at 485, 514 S.E.2d at 134 ("[T]he person making [the defamatory statement] must be careful to go no further than his interests or his duties require. ... And the fact that a duty, a common interest, or a confidential relation existed to a limited degree, is not a defense, even though the publisher acted in good faith." (quoting Fulton, 220 S.C. at 297, 67 S.E.2d at 429 ) ).
In the instant case, evidence demonstrates Loree's statements to subcontractors-that Kunst took money from other clients-went beyond the scope of the subcontractors' involvement in the Gaby project. At trial, Goad and Alfonzo testified Loree informed them that Kunst took money from other clients. Further, Goad testified Loree mentioned that Kunst spent client money on other projects. In our view, any discussion of Kunst's dealings outside of the Gaby project, even if with another person with a common interest in the matter, would amount to an abuse of privilege and would render the protection lost. We find that Loree could have investigated the Gaby project without implicating Kunst's financial affairs with other clients. Thus, the circuit court properly denied Loree's motions for directed verdict and JNOV because evidence **45 existed that allowed the jury to find Loree's statements regarding Kunst and other clients exceeded the scope of the qualified privilege.
Additionally, Loree argues Kunst failed to meet his burden of showing an abuse of privilege because he failed to prove actual malice by Loree. However, we find that Loree misconstrues the law because a plaintiff may also show an abuse of a qualified privilege by demonstrating the speaker exceeded the scope of the qualified privilege. See id. at 484, 514 S.E.2d at 134 ("Whe[n] the occasion gives rise to a qualified privilege, there is a prima facie presumption to rebut the inference of malice, and the burden is on the plaintiff to show actual malice or that the scope of the privilege has been exceeded." (emphasis added) ). Accordingly, the circuit court did not err in submitting the issue to the jury because evidence at trial allowed for *306 factual inquiries as to whether the privilege was abused or exceeded. See id. at 485, 514 S.E.2d at 134 ("Factual inquiries, such as whether the defendants acted in good faith in making the statement, whether the scope of the statement was properly limited in its scope, and whether the statement was sent only to the proper parties, are generally left in the hands of the jury to determine whether the privilege was abused.").
Because evidence existed for the jury to determine that Loree abused or exceeded his privilege, we find the circuit court did not err in sustaining the verdict and properly denied Loree's motions for directed verdict and JNOV.
III. Damages
Last, Loree contends the circuit court erred in sustaining the verdict because the verdict was excessive. We disagree.
In a successful defamation claim, the plaintiff recovers for injuries to his or her reputation, which result from the defendant's communications to others of a false message concerning the plaintiff. Murray , 344 S.C. at 138, 542 S.E.2d at 748. Consequently, "[d]efamation does not focus on the hurt to the defamed parties' feelings, but on the injury to their reputations." Castine , 403 S.C. at 265, 743 S.E.2d at 96. If the alleged defamatory statement is actionable per se, the law presumes that the defendant acted with common law malice **46 and the plaintiff suffered general damages;[8] however, if the alleged defamatory statement is not actionable per se, the plaintiff must then plead and prove both common law malice and special damages. See Fountain , 398 S.C. at 442, 730 S.E.2d at 309.
The jury maintains discretion, as reviewed by the circuit court, in awarding actual and punitive damages. See Miller v. City of West Columbia , 322 S.C. 224, 230, 471 S.E.2d 683, 687 (1996). "The grant or denial of new trial motions rests within the discretion of the [circuit court] and [its] decision will not be disturbed on appeal unless [its] findings are wholly unsupported by the evidence or the conclusions reached are controlled by error of law." Stevens v. Allen , 336 S.C. 439, 446, 520 S.E.2d 625, 628-29 (Ct. App. 1999), aff'd, 342 S.C. 47, 536 S.E.2d 663 (2000). While a circuit court may grant certain new trial motions on the ground that the verdict is inadequate or excessive, a jury's determination of damages is given substantial deference. Id. at 446-47, 520 S.E.2d at 629.
When considering whether the verdict is excessive, a court will not disturb the jury's verdict if substantial evidence exists to sustain the verdict. Miller , 322 S.C. at 231, 471 S.E.2d at 687. An appellate court will only intervene when the verdict is "so grossly excessive and the amount awarded is so shockingly disproportionate to the injuries to indicate that it was the result of caprice, passion, prejudice, or other considerations not found on the evidence." Id. ; see also Easler v. Hejaz Temple A.A.O.N.M.S. of Greenville , 285 S.C. 348, 356, 329 S.E.2d 753, 758 (1985) (stating that, while an appellate court will overturn a verdict actuated by passion, caprice, or prejudice, it "will not set aside a verdict for its possibly undue liberality"). "A verdict which may be supported by any rational view of the evidence and bears a reasonable relationship to the character and extent of the injury and damage sustained, **47 is not excessive." Young v. Warr , 252 S.C. 179, 187, 165 S.E.2d 797, 801 (1969).
The circuit court may grant a new trial nisi when it finds the amount to be merely inadequate or excessive. Vinson , 324 S.C. at 405, 477 S.E.2d at 723. However, a party must provide compelling reasons to justify invading the province of the jury. Id. "The [circuit court that] heard the evidence and is more familiar with the evidentiary atmosphere at trial possesses a better-informed view of the damages than this [c]ourt.
*307 Accordingly, great deference is given to the [circuit court]." Id. at 405-06, 477 S.E.2d at 723 (citation omitted). The denial of a motion for a new trial nisi will not be reversed on appeal unless there was an abuse of discretion. Id. at 406, 477 S.E.2d at 723. An appellate court is obligated to review the record and determine whether an abuse of discretion amounting to an error of law exists. Id. at 406, 477 S.E.2d at 723-24.
At the conclusion of the trial, Loree moved for JNOV, a new trial absolute, or in the alternative, a new trial nisi remittitur , all of which the circuit court summarily denied. On appeal, Loree appears to rely on the premise that Kunst failed to prove slander per se and did not provide evidence of special damages to support the jury's award. However, as previously discussed, we find Loree's alleged defamatory statements were actionable per se and not protected by a qualified privilege. Accordingly, South Carolina law presumes Loree acted with common law malice and Kunst suffered general damages. See Fountain , 398 S.C. at 442, 730 S.E.2d at 309 ; contra Murray , 344 S.C. at 142, 542 S.E.2d at 750 (finding that, although slander is actionable per se, the plaintiff must prove actual malice if the communication is privileged because a privileged communication is the exception to the rule that malice is presumed from statements that are actionable per se). Therefore, because Kunst's general damages were presumed and he was not required to prove actual malice or special damages, the circuit court did not err in denying Loree's motions.
Loree also argues the circuit court erred because the jury's award of $1 million was grossly excessive and not based on **48 any evidence in the record,[9] and because Loree's statements did not cause Kunst's damages. Moreover, Loree contends that Sanders v. Prince , 304 S.C. 236, 403 S.E.2d 640 (1991), warrants the grant of a new trial because the jury's award was "shockingly disproportionate to Kunst's injuries." Last, Loree asserts the circuit court erred in sustaining the verdict because the verdict was excessive given the lack of evidence at trial. We disagree.
In the instant case, Loree asserts the jury exceeded its authority when it sent a note to the circuit court asking whether it could stipulate how Kunst should distribute any award to his creditors, if it found against Loree. Loree contends the jury's note was the exact type of evidence our supreme court in Sanders found to indicate that a jury was motivated by passion, caprice, or prejudice. See Sanders , 304 S.C. at 238-89, 403 S.E.2d at 642. We find Duncan v. Hampton County School District Number 2 is more akin to the instant case than Sanders . See 335 S.C. at 535, 517 S.E.2d at 449. Indeed, in Duncan , this court clarified the holding from Sanders , stating that while the jury's question in Sanders may have been evidence of the jury's improper motive, the lack of evidence supporting the size of the award played a major role in our supreme court's decision to grant a new trial in Sanders . See Duncan , 335 S.C. at 548, 517 S.E.2d at 455-56. Importantly, the court of appeals distinguished Duncan from Sanders , and found that the evidence in Duncan supported the large verdict and that the jury's recommendations to the circuit court were not evidence of an improper motive, when the recommendations were consistent with a reasonable view of the evidence. Id. at 548-49, 517 S.E.2d at 456.
Like Duncan , we find evidence in this case supports the jury's award of damages. Moreover, we find the jury's question was consistent with a rational view of the evidence because it directly related to the testimony introduced at trial. See id. ("Significantly, these recommendations are consistent with a reasonable view of the evidence and do not indicate that the jury's verdict was based on an improper motive."); see also King v. Daniel Int'l Corp. , 278 S.C. 350, 355, 296 S.E.2d 335, 338 (1982) ("[The appellate court] will not usually interfere in **49 the amounts of verdicts, the matter being ordinarily within the sound discretion of the [circuit court], unless the verdict is so grossly excessive as to be deemed the result of a disregard of the facts and of the court's instructions, and to be due to passion and prejudice rather than reason."). Here, Kunst testified he owed roughly $400,000 to subcontractors *308 and vendors and estimated he would need approximately $1.6 million to design homes again. Kunst claimed he borrowed nearly $650,000 from others for his legal debts and "to survive." Kunst also estimated his total economic loss was nearly $2.6 million. Last, Kunst specifically mentioned he would not have incurred a loss in his greatest investment project "but for Loree coming to town."
Of note, the jury heard evidence of Kunst's success and reputation prior to the alleged defamation, including:
(1) Kunst's testimony discussing the great trust he developed with his clients, vendors, and subcontractors;
(2) Kunst's testimony discussing how he personally guaranteed his accounts with his suppliers;
(3) Kunst's testimony discussing how his designs were well-known and unique;
(4) Kunst's testimony discussing how articles from two periodicals featured him, his company, and his designs;
(5) Kunst's testimony discussing how he earned nearly $200,000 a year in fees;
(6) Kunst's testimony discussing how, prior to 2006, he had the most clients and projects in his company's history;
(7) Kunst's testimony that he had approximately eight simultaneous projects; and
(8) The introduction of Kunst's letter to clients, which detailed how his homes in The Reserve ranged in price from $200 per square foot to $350 per square foot, which he indicated was much less than the average cost of other builders.
The jury heard evidence of the damage to Kunst after Loree's investigation, including:
(1) Testimony that Kunstwerke's clients abruptly stopped paying their progress billings, when no client previously missed a payment;
**50 (2) Testimony that Kunst lost his investments in other projects;
(3) Testimony that Kunst moved to Pittsburgh to try and start over;
(4) Testimony that Kunst worked as a security guard; and
(5) Testimony that Kunst's reputation around The Reserve diminished.
While Kunst admitted Goad and Alfonzo were willing to work with him again, Kunst implied his reputation with other suppliers and vendors was damaged because many would be unwilling to work with him as they believed he was "the reason they're owed money." Thus, evidence exists to support the jury's verdict.
We do not find the award to be unreasonable in relation to the character and extent of the injury. See Young , 252 S.C. at 187, 165 S.E.2d at 801 ("A verdict which may be supported by any rational view of the evidence and bears a reasonable relationship to the character and extent of the injury and damage sustained, is not excessive."). Considering a person's reputation is invaluable, we find Loree failed to establish that the verdict was excessive. See Miller , 322 S.C. at 231, 471 S.E.2d at 687 (finding that, "[w]hen considering that a person's reputation is invaluable," the defendant failed to establish the verdict was grossly excessive because evidence of the plaintiff's status and time at the police department, history of winning the highest awards, and inability to obtain employment demonstrated the defendant effectively destroyed the plaintiff's reputation). Given the evidence at trial, the amount of the award does not indicate that the jury's verdict resulted from prejudice, passion, partiality, bias, or caprice. Furthermore, we find a rational view of the evidence supports the award. Accordingly, the circuit court did not err in denying Loree's motion for a new trial.
CONCLUSION
Based on the foregoing analysis, the circuit court's denials of Loree's motions for a directed verdict, for JNOV, for a new **51 trial, and, in the alternative, for a new trial nisi remittitur are:
AFFIRMED.
THOMAS and MCDONALD, JJ., concur.

In the early 2000s, two periodicals wrote articles featuring Kunst and his uniquely designed homes.

Conversely, Loree testified he believed Kunstwerke's billing operated as a pass-through account, wherein funds forwarded to Kunstwerke by the client for tallied invoices were passed directly to the subcontractor or vendor for the invoiced amount.

Kunst claimed his fees helped his business stand out because his fees were typically less than the fees of other builders or designers that performed similar work. As an example, Kunst stated he only charged the Gabys $96,000, when the project should have cost $600,000.

Loree's stated employment with the Gabys was as an "executive protection coordinator/property manager."

In response to Loree's testimony regarding unpaid subcontractors, Kunst testified he withheld payments of certain subcontractors-despite collecting money for their payment-because the Gabys were behind in their reimbursements to Kunstwerke and Kunst needed to reconcile or settle the Gabys' account before proceeding further.

See Kunst v. Loree , 404 S.C. 649, 746 S.E.2d 360 (Ct. App. 2013).

Kunst's pretrial statements differ slightly from those alleged in his complaint. At the pretrial hearing, however, Kunst stated his pretrial brief statements were more specific than the statements in the complaint, and he consented to being limited to the pretrial brief statements.

General damages include injuries such as: injury to one's reputation, mental suffering, hurt feelings, and any other similar injury that is incapable of being given a definitive monetary valuation. Holtzscheiter v. Thomson Newspapers, Inc. , 332 S.C. 502, 510 n.4, 506 S.E.2d 497, 502 n.4 (1998). Conversely, "special damages are tangible losses or injury to the plaintiff's property, business, occupation[,] or profession, capable of being assessed monetarily, which result from injury to the plaintiff's reputation." Id.

At oral argument, Loree conceded that Kunst testified to damages.