**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Bittmint, LLC and Harbour Town Surf Shop, LLC,
Appellants,

v.

Lynda H. Johnson, Charles S. Giannone, and Sea Pines
Resort, LLC, Respondents.

Appellate Case No. 2022-000867

———————

Appeal From Beaufort County
Bentley Price, Circuit Court Judge

———————

Unpublished Opinion No. 2025-UP-273
Heard April 7, 2025 – Filed July 30, 2025

———————

**REVERSED**

———————

Mike W. Mogil, of Law Ofc. of Michael W. Mogil, P.A.,
of Hilton Head Island; Ian S. Ford and Ainsley Fisher
Tillman, both of Ford Wallace Thomson, LLC, of
Charleston; Edward Michael Kubec, of Novit &
Scarminach, PA, of Hilton Head Island; and Maureen T.
Coffey, of Bluffton; all for Appellants.

George Trenholm Walker and John Phillips Linton, Jr.,
both of Walker Gressette Freeman & Linton, LLC, of
Charleston, for Respondents.

_____

**PER CURIAM:** Bittmint, LLC and Harbour Town Surf Shop, LLC (collectively, Bittmint) appeal the circuit court's grant of directed verdict in favor of sellers Lynda H. Johnson, Charles S. Giannone, and Sea Pines Resort, LLC (collectively, Respondents). Bittmint argues the circuit court erred in granting directed verdict because (1) it decided a fundamental question of fact on directed verdict, (2) the right of first refusal was an unreasonable restraint on the alienation of property, (3) Respondents' liability could be inferred from the evidence, and (4) the right of first refusal was nontransferable. Bittmint also argues this court should reverse the circuit court's award of attorney's fees to Respondents. We reverse the circuit court's grant of directed verdict to Respondents and its award of attorney's fees.

## FACTS AND PROCEDURAL HISTORY

Sea Pines Resort's (Resort's) claimed right of first refusal was created in 1973 when Lighthouse Beach Company planned to develop commercial property on Hilton Head Island and recorded commercial use covenants (the 1973 Covenants) as part of that development. The 1973 Covenants are recorded in Book 206, at page 1143, of the Beaufort County Register of Deeds. The right of first refusal appears in section 19 of the 1973 Covenants and states:

> In the event the owner desires to sell a Commercial Property site on Hilton Head Island together with its improvements, if any, then said property shall be offered for sale to the Company at the same price at which the highest bona fide offer has been made for the property, and the said Company shall have thirty (30) days within which to exercise its option to purchase said property at this price; and should the Company fail or refuse, within thirty (30) days after receipt of written notice of the price and terms, to exercise its options to purchase said property at the offered price, then the owner of said property shall have the right to sell said property, subject, however, to all covenants and limitations herein contained, at a price not lower than that at which it was offered to the Company.

The 1973 Covenants define the term "the Company" as "Lighthouse Beach Company, its successors and assigns."

Lighthouse Beach Company was dissolved in 1975.  In 1977, the Prospect Company, which was the liquidating partner of Lighthouse Beach Company, assigned Lighthouse Beach Company's option to repurchase property within Sea Pines Plantation to Sea Pines Planation Company.  The assignment stated that it assigned to Sea Pines Planation Company "all rights, obligations, benefits, including the right to waive, all repurchase options in real property within Sea Pines Plantation on Hilton Head Island in Beaufort County, South Carolina, which was owned, possessed, and seized unto Lighthouse Beach Company."  Sea Pines Plantation Company filed for bankruptcy in 1986.  In 2006, Resort bought property owned by Sea Pines Company, Inc. f/k/a Sea Pines Plantation Company, Inc.; Sea Pines Forest Preserve Conservation Association, Inc.; Tide Pointe, Inc.; Sea Pines/Tide Pointe, Inc.; Sea Pines Real Estate Company, Inc.; Lighthouse Realty, Inc.; RG Subsidiary Corporation; The Fifth Golf Course Club, Inc.; and Sea Pines Associates, Inc.[1]

In 2018, Bittmint filed an amended complaint against Respondents that included causes of action to set aside a deed of sale from Johnson and Giannone (Sellers) to Resort and for breach of contract against Sellers.  Claims against Resort included causes of action for interference with a contractual relationship and interference with prospective contractual relations.  The complaint further asserted the claimed right to purchase violated the common law rule against perpetuities; was an invalid assignment; was unenforceable as violative of the statute of repose; and interfered with the third-party rights of Harbor Town Surf Shop, the intended beneficiary of Bittmint's contract of sale.  With respect to this contract of sale, Bittmint, which owned Harbour Town Surf Shop, LLC, alleged that on March 17, 2017, it entered into a written contract with Sellers to purchase Shop 6 and Shop 8 of the Mariners Way Horizontal Property Regime in Harbour Town (the Property), which is part of Sea Pines Plantation.  Bittmint stated it sent a request for waiver to Resort on April 14, 2017, "pursuant to historical transaction protocols regularly performed in real estate settlement involving property with Sea Pines Plantation, without any reference or knowledge of the source or authority of such [w]aivers."  Resort informed Bittmint and Sellers on May 2, 2017, that it planned to exercise its right of first refusal to purchase the Property for $580,000, the price set forth in the contract between Bittmint and Sellers.  Bittmint alleged it notified Sellers it did not believe Resort possessed a valid right of first refusal and that it planned to proceed

---

[1] The deed from the 2006 sale to Resort was attached to an affidavit filed with Respondent's motion for summary judgment, which Judge Jennifer McCoy denied. The 2006 deed was not entered into evidence at trial, but it is included in the record on appeal.

with the contract for sale. Sellers conveyed the Property to Resort in a deed recorded on May 12, 2017.

Bittmint filed several motions in limine, including a motion arguing the circuit court should restrict any evidence of the alleged right of first refusal because the right found in the 1973 Covenants was void under the common law rule against perpetuities. At the beginning of the trial, the circuit court denied Bittmint's motion in limine on this issue, stating:

> As for the motion in limine on behalf of [Bittmint] . . . to exclude any discussion of evidence of right of first refusal, to be quite honest with you, I think that's pretty much the crux of the case. So, obviously, I'm going to deny that and allow that as a question of fact for the jury and I'm going to allow them to take that into consideration.

During the trial, Amir Bitton testified he and Alon Mintz opened Harbour Town Surf Shop in 2010, when they began leasing Shop 6, one of the shops that made up the Property, from Sellers' mother, Lorraine Giannone. In 2015, Bitton and Mintz signed an agreement to lease the Property from Lorraine for $54,250 per year ($4,520.83 per month). Bitton testified he and Mintz formed Bittmint as a real estate company in 2014. He stated Bittmint bought a business and property in Harbour Town called "the general store" in 2016. Bitton stated he was not aware of anyone sending a waiver of the right of first refusal to Resort regarding the sale of the general store, but he recalled reading something about the waiver in an email he reviewed after the sale of the general store closed.

Bitton testified that after Lorraine died in 2016, he told Sellers that Bittmint wanted to purchase the Property if they planned to sell it. He stated that he negotiated with Sellers on the price of the Property until they agreed to $580,000 in January 2017. Bitton stated Sellers asked Mintz to create a letter of intent to inform Resort of the impending sale and that Sellers signed the letter drafted by Bittmint's counsel, Michael Mogil. He testified he did not know about Resort's right of first refusal at that point, although he knew some waivers were needed from the Resort. Bitton read into the record the section of the contract of sale stating that Sellers should obtain all appropriate waivers from Resort within thirty days of the date of execution of the contract. He testified he did not know what kind of waivers Sellers needed to obtain from Resort. Bitton testified Mogil informed him that Resort planned to purchase the Property. He stated Bittmint made an offer for $590,000 for the Property after learning Sellers planned to sell

the Property to Resort, but Sellers refused the offer. Bitton testified Harbour Town Surf Shop was still a tenant at the Property, which Resort now owned. He testified that if Bittmint had successfully purchased the Property, Harbour Town Surf Shop would have paid Bittmint $500 a month after paying for expenses such as base rent, taxes, and insurance.

Robert Bender, who was director of recreations and marine operations for Resort at the time of the sale, testified Sellers informed him they planned to sell the Property in 2016. Bender stated that in an August 24, 2016 email he requested Sellers provide more details about the Property, such as square footage, a copy of any leases, current rent, and regime fees. Bender confirmed that Sellers originally wanted $460,000 for each shop, but by January 2017, the asking price was $650,000 for the Property. He stated that in a January 18, 2017 email he informed Cliff Mackin that Bittmint offered $585,000 for the Property and wrote "based on my calculations [the Property] looks like something [Resort] should strongly consider." Bender recalled that he attached a financial analysis of the Property to the email. Bender testified that on February 1, 2017, he sent an email to Mackin and Steve Birdwell stating Sellers informed him they planned to move forward with the sale of the Property for $580,000. Bender stated Resort received the contract for the sale of the Property to Bittmint on April 17, 2017, and decided to exercise the right of first refusal in early May. Bender stated he had never seen a piece of paper stating Resort had a right of first refusal but he understood it came from Resort's covenants. On cross-examination, Bender testified Resort received a request for waiver "and/or" assessments (the waiver form) from Bittmint on April 13, 2017. He testified that the waiver form stated, "The above referenced property is hereby offered for sale to the company pursuant to the same terms and price contained in the current contract of sale with the bona fide purchaser referenced above." Bender testified the waiver form included information about the Property, the seller, the purchaser, and the sales price. He stated the contract Resort received on April 17, 2017, was the first time Resort had written notice of the terms of the contract.

Johnson testified she learned about the right of first refusal five years earlier when Sellers first started negotiations for the Property with Bitton and Mintz. Johnson stated she did not give the letter of intent to Resort, but noted her lawyer may have provided it. On cross-examination, Johnson testified she did not think her lawyers sent the letter of intent to Resort and that if her lawyers did send the letter, she did not know when it was sent. She also stated she discussed the right of first refusal with Mintz before they entered a contract to sell the Property to Bittmint. She

testified she told Mintz that Resort might take the Property for $580,000, and Mintz replied that Resort did not take commercial property.

Mintz testified he did not know what the right of first refusal was when Bittmint purchased the general store. He stated Johnson told him that she gave the letter of intent to Resort a week after it was signed on January 31, 2017. Mintz testified he agreed to have Bittmint's attorney check on any waivers needed from Resort to keep Johnson from accruing more legal fees. He stated he did not know about Resort's right of first refusal at that point. Mintz stated he learned Resort planned to purchase the Property when his attorney forwarded him an email from Resort on May 2, 2017. Mintz stated Harbour Town Surf Shop suffered damages from the canceled sale because instead of paying the mortgage and $500, it had to continue paying base rent to Resort. He estimated that if Bittmint had bought the Property, Harbour Town Surf Shop would have paid approximately $3,600 a month to Bittmint for the mortgage plus an additional $500, but instead they still pay $4,500 to Resort; therefore, Bittmint lost approximately $900 a month. On cross-examination, Mintz maintained that he did not know about the right of first refusal until May 2017.

Mogil testified that Mintz asked him to obtain any waiver required by the contract of sale between Sellers and Bittmint. He stated it was unusual for the purchaser's side to obtain the waivers but Mintz asked him to handle the waivers because Sellers asked Mintz to handle it. Mogil testified he asked his paralegal to send the waiver form used in residential transactions, which Resort created. He recalled sending the waiver form to Resort in early April 2017. He stated that on May 2, 2017, he received an email from Simon Fraser, an attorney for Resort, informing him Resort elected to exercise its right of first refusal to purchase the Property. Mogil testified he requested Fraser refer him to the covenant, by-law, or other provision under which Resort elected to exercise the right of first refusal. Mogil read Fraser's reply email into the record; it stated the right of first refusal appeared in Deed Book 173, page 46; Deed Book 92, page 152; and Deed Book 128, page 185. Mogil told Fraser in a reply email that they needed to discuss the issue further because the covenant references Fraser sent related to Class A residential sites. Fraser replied that additional covenants applying to commercial lands appeared in Deed Book 124, page 35; Deed Book 172, page 316; and Deed Book 209, page 1745. Mogil testified Fraser later emailed him the deed book page numbers for the 1973 Covenants, which appeared in Deed Book 206 at page 1143, and the 1977 assignment of rights to Sea Pines Plantation, which appeared in Deed Book 246 at page 2087.

Mogil testified he reviewed all the covenants Fraser sent him and did not agree that the right of first refusal had been assigned to Resort. Thus, he filed a lis pendens and sent a letter to Sellers' attorney. A portion of Mogil's letter to Sellers, which Mogil read into the record, stated, "There are a number of issues presented by the exercise of the option, including a determination of exactly what rights Sea Pines has, if any, and how those rights are to be exercised." He later filed this lawsuit on behalf of Bittmint.

At the close of Bittmint's case, Resort moved for directed verdict as to all causes of action in the complaint. Resort argued no breach of contract occurred because the contract between Bittmint and Sellers required Sellers to obtain appropriate waivers from Resort, and Resort never signed the waiver form. Resort also contended no breach of contract occurred because the waiver form sent by Bittmint included a separate offer to purchase the Property that Resort accepted. Resort argued there was no tortious interference with a contract or intentional interference with prospective contractual relations because no breach of contract occurred. It further asserted no causes of action existed as to the alleged violation of the common law rule against perpetuities or invalid assignment of rights. As to Bittmint's cause of action to set aside the deed, Resort argued Bittmint alleged no grounds, such as fraud or constructive trust, to support setting aside the deed. Resort argued Harbour Town Surf Shop had established no basis for a third-party beneficiary claim because the contract was not intended to benefit Harbour Town Surf Shop. It further contended no affirmative claim exists as to a statute of repose because such a statute provides only a defense. Resort additionally asserted Bittmint did not carry its burden of proof as to damages.

In opposition to the motion for a directed verdict, Bittmint argued no evidence was presented to establish Resort held a right of first refusal in the Property. Bittmint argued it presented evidence of damages through the testimonies of Bitton and Mintz that Harbour Town Surf Shop would have paid Bittmint $500 a month if Bittmint had successfully purchased the Property. As to the third-party beneficiary claim, Bittmint argued its contract with Sellers indicated Bittmint planned to take the Property subject to the lease between Harbour Town Surf Shop and Sellers, which demonstrated that the contract benefited Harbour Town Surf Shop.

After taking the matter under advisement, the circuit court asked whether Resort's contention that it had a right of first refusal based on the assignment of the 1973 Covenants involved a question of fact or a question of law. Resort believed this was a question of law and asserted Bittmint failed to prove Resort did not have the right of first refusal. Bittmint's position was that the right of first refusal was never assigned to Resort after the Sea Pines Plantation Company went into bankruptcy in

1986.  When the circuit court questioned why Resort created the waiver form if no such right of first refusal existed, Bittmint and Resort stated that only the assignment of the 1973 Covenants created by Lighthouse Beach Corporation was in question in this case, not all rights of first refusal created by other covenants related to Sea Pines.  The circuit court then stated the following,

> I understand what your argument is, so correct me if I'm wrong, that Sea Pines, obviously, moving forward has developed a lot of property in the Resort, I would assume.  And in doing so, since they were the original builders and developers, they get to create whatever covenants that they want for these properties.  Is there anything that's indicating that for Harbour Town, which was not developed by Sea Pines, it was developed by Lighthouse, that they have been operating under the auspices that they adopted the covenants and have been living under those covenants because they didn't develop the property and they can't change them because they inherited them from Lighthouse?
>
> So what I'm saying is this Sea Pines over here on this side says well, as to Harbour Town, we're stuck, we don't get to create new covenants because we inherited them when we purchased the property out of bankruptcy from Lighthouse, and so they are operating under that auspice that they have no way of changing it because they can't, But they can do whatever the heck they want over here because they are the developer and they can create any covenant that they want.  It's over.
>
> All right, I'll grant the motion for directed verdict.

When Bittmint asked for clarification, the circuit court responded:

> Sea Pines has been working under the auspices that they can't create anything new because they can't.  They purchased the rights and assigns from Lighthouse.  So they have created an entirely separate company, which is real estate administration – not company, a sector of Sea Pines, which sends these out to everybody that wants to purchase the property because they know that they have

the right of first refusal as to those properties that they inherited that were developed by Lighthouse.

The circuit court stated it granted the directed verdict to Respondents based on its ruling that the right was assigned to Resort. Bittmint put on the record its argument that a question of fact existed as to when the thirty-day period given to Resort by the 1973 Covenants to exercise its right of first refusal commenced. Bittmint argued Resort failed to exercise the right of first refusal within the thirty-day period because Resort received the letter of intent in February 2017, but failed to exercise the right until May 2017.

After Bittmint requested a ruling on the applicability of the rule against perpetuities, the circuit court held that no breach of contract or tortious interference with a contractual relationship occurred because Resort exercised its right of first refusal. As to the rule against perpetuities, the circuit court stated it believed "that Sea Pines received those rights [from the 1973 Covenants] from Lighthouse and have been operating in the auspices for the entire time that they were, in fact, bound by that obligation." The circuit court further stated it had already ruled on the invalid assignment claim, would deny the cause of action to set aside the deed, believed there were no damages to a third-party beneficiary, rejected any claim as to a violation of the statute of repose, and found there was no claim for intentional interference with a prospective contractual relationship. The circuit court then issued a Form 4 order granting Respondents' motion for directed verdict.

Bittmint filed a Rule 59(e), SCRCP motion, which the circuit court denied. Respondent filed a motion for attorney's fees and costs, along with an affidavit from Respondents' counsel and a spreadsheet of costs from counsel's firm. The circuit court granted Respondents' motion, awarding $96,614.25 in attorney's fees and $7,004.39 in court costs for a total award of $103,618.64. This appeal followed.

**ISSUES ON APPEAL**

1. Did the circuit court err in deciding a fundamental question of fact on directed verdict in a jury trial?

2. Did the circuit court err in granting directed verdict because the right of first refusal at issue was an unreasonable restraint on the alienation of property, as a matter of law?

3. Did the circuit court err in granting directed verdict to Resort and Sellers because their liability could be inferred from the evidence?

4. Did the circuit court err in granting directed verdict because the right of first refusal at issue was non-transferable as a matter of law?

5. Did the circuit court err in awarding attorney's fees to Respondents because directed verdict was improper?

## STANDARD OF REVIEW

"When upon a trial the case presents only questions of law the judge may direct a verdict." Rule 50(a), SCRCP. "In ruling on a motion for a directed verdict, the [circuit] court is required to view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the party opposing the motion." *All Saints Par. Waccamaw v. Protestant Episcopal Church in Diocese of S.C.*, 385 S.C. 428, 442, 685 S.E.2d 163, 170 (2009). "If the evidence at trial yields more than one reasonable inference or its inference is in doubt, the circuit court must deny the motion for directed verdict . . . ." *Kunst v. Loree*, 424 S.C. 24, 38, 817 S.E.2d 295, 302 (Ct. App. 2018). "When ruling on a motion for a directed verdict, the [circuit] court is concerned with the existence or non-existence of evidence, not its weight." *State v. Condrey*, 349 S.C. 184, 190, 562 S.E.2d 320, 323 (Ct. App. 2002).

"The appellate court applies the same standard in reviewing the [circuit] court's grant or denial of a motion for directed verdict." *Newbern v. Ford Motor Co.*, 428 S.C. 310, 314-15, 833 S.E.2d 861, 864 (Ct. App. 2019). "This court will reverse the circuit court's ruling on a directed verdict motion only when there is no evidence to support the ruling or when the ruling is controlled by an error of law." *Chalfant v. Carolinas Dermatology Grp., P.A.*, 439 S.C. 372, 384, 887 S.E.2d 1, 7 (Ct. App. 2023) (quoting *Turner v. Med. Univ. of S.C.*, 430 S.C. 569, 582, 846 S.E.2d 1, 7 (Ct. App. 2020)). "An appellate court will reverse the [circuit] court's grant of a directed verdict when any evidence supports the party opposing the directed verdict." *Graves v. Horry-Georgetown Tech. Coll.*, 391 S.C. 1, 7, 704 S.E.2d 350, 354 (Ct. App. 2010). "[N]either the [circuit] court nor the appellate court has authority to decide credibility issues or to resolve conflicts in the testimony or evidence." *Erickson v. Jones St. Publishers, LLC*, 368 S.C. 444, 463, 629 S.E.2d 653, 663 (2006).

"Generally, attorney['s] fees are not recoverable unless authorized by contract or statute." *Am. Fed. Bank, FSB v. No. One Main Joint Venture*, 321 S.C. 169, 175,

467 S.E.2d 439, 442 (1996). "When a contract exists, the award of attorney['s] fees is left to the discretion of the [circuit court] and will not be disturbed unless an abuse of discretion is shown." *Id.*

## LAW AND ANALYSIS

Bittmint argues the circuit court erred in granting directed verdict for Respondents because whether Resort possessed an enforceable right of first refusal over the Property was a question of fact for the jury. We agree.

We hold the circuit court erred in granting Respondents' motion for directed verdict because Bittmint presented evidence creating more than one reasonable inference as to whether Resort had an enforceable right of first refusal in the Property. *See Kunst*, 424 S.C. at 38, 817 S.E.2d at 302 ("If the evidence at trial yields more than one reasonable inference or its inference is in doubt, the circuit court must deny the motion for directed verdict . . . ."). In its complaint, Bittmint alleged Sellers breached their contract with Bittmint when they conveyed the Property to Resort. Respondents argued no breach of contract occurred because the contract included a requirement to obtain waivers from Resort, and Resort elected not to waive its right of first refusal when Bittmint submitted a waiver form. Mogil testified that after he learned Resort planned to buy the Property he asked for further evidence that the 1973 Covenants contained a right of first refusal applicable to the transaction between Bittmint and Sellers. Bittmint entered into evidence emails between Mogil and Fraser in which Mogil requested more information regarding the covenants assigning Resort the right of first refusal. Fraser responded with the deed book page numbers where Resort claimed the right of first refusal appeared. Mogil testified he reviewed the pages in the deed book that Fraser referenced and did not agree with Fraser's contention that the covenants applied to the transaction in this case. During his testimony, Mogil also read from a letter he sent to Sellers' attorney stating Resort had communicated it planned to exercise a right of first refusal and that "[t]here [we]re a number of issues presented by the exercise of the option, including a determination of exactly what rights Sea Pines has, if any, and how those rights are to be exercised." This evidence raised more than one reasonable inference as to whether Resort obtained an assignment of the right of first refusal contained in the 1973 Covenants. *See Jones v. Leagan*, 384 S.C. 1, 13, 681 S.E.2d 6, 12 (Ct. App. 2009) ("Sworn testimony, albeit self-serving, is still evidence."). Therefore, viewing the evidence in the light most favorable to Bittmint, we hold the circuit court erred in granting directed verdict to Respondents.

Further, we find the evidence presented created more than one reasonable inference as to whether Resort exercised its purported right of first refusal within the thirty days required by the 1973 Covenants. The 1973 Covenants state "the said Company shall have thirty (30) days within which to exercise its option to purchase said property." This provision further states "should the Company fail or refuse, within thirty (30) days after receipt of written notice of the price and terms, to exercise its options to purchase said property at the offered price, then the owner of said property shall have the right to sell said property." Bittmint alleged Sellers provided Resort with a nonbinding letter of intent describing the sale of the Property to Bittmint, including the sale price of $580,000, in early February 2017. Mintz testified that Johnson told him she had given the letter of intent to Resort a week after they signed it. However, Johnson testified she did not think her lawyers sent the letter of intent to Resort and that if her lawyers sent the letter, she did not know when they sent it. Bittmint and Sellers signed a contract for the sale of the Property on March 17, 2017. Bittmint sent a copy of Resort's waiver form to Resort on April 13 and a copy of the contract for sale on April 17. Resort informed Bittmint it planned to exercise its right of first refusal to purchase the Property in an email sent May 2, 2017. This testimony presents more than one reasonable inference as to whether Resort exercised any enforceable right of first refusal within thirty days of receiving written notice of the price and terms of the sale as required by the 1973 Covenants. Bittmint produced testimony that Resort received written notice when it received the letter of intent in February 2017, well over thirty days before Resort notified Bittmint on May 2 that it planned to purchase the Property. *See Graves*, 391 S.C. at 7, 704 S.E.2d at 354 ("An appellate court will reverse the [circuit] court's grant of a directed verdict when any evidence supports the party opposing the directed verdict."); *Kunst*, 424 S.C. at 38, 817 S.E.2d at 302 ("If the evidence at trial yields more than one reasonable inference or its inference is in doubt, the [trial] court must deny the motion for directed verdict."). Accordingly, we hold the circuit court erred in granting Respondent's motion for directed verdict.

Because Respondents are no longer the prevailing parties based on our decision to reverse the circuit court's grant of directed verdict in their favor, we reverse the circuit court's award of attorney's fees. *See Richland County v. Kaiser*, 351 S.C. 89, 97, 567 S.E.2d 260, 264 (Ct. App. 2002) (reversing the award of attorney's fees when, based on this court's reversal of the circuit court's findings, the respondents were no longer the prevailing parties).

We decline to address Bittmint's remaining issues on appeal in light of our reversal of the circuit court's grant of directed verdict. *See Futch v. McAllister Towing of*

*Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (finding it was not necessary to address the appellant's remaining issues when the disposition of a prior issue was dispositive).

**CONCLUSION**

Based on the foregoing, the circuit court's grant of directed verdict and award of attorney's fees to Respondents are

**REVERSED.**

**KONDUROS, MCDONALD, and VINSON, JJ., concur.**